**Russel Wayne URQUHART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–02–00168–CR.**

Court of Appeals of Texas,
El Paso.

Dec. 11, 2003.

Rehearing Overruled Feb. 27, 2004.

Christian T. Souza, Dallas, for appellant.

John R. Roach, Criminal District Attorney, McKinney, for The State of Texas.

Before Panel No. 5 LARSEN, McCLURE, and WITTIG, JJ.

## MEMORANDUM OPINION

DON WITTIG, Senior Justice (Assigned).

Russell W. Urquhart appeals his jury conviction of driving while intoxicated, a Class B misdemeanor. The court assessed punishment of 180 days' confinement and a fine of eight hundred dollars. The confinement was suspended and Appellant was placed on community supervision for two years. In three issues, Appellant challenges the denial of his motion to suppress the breath-alcohol test, the trial court's finding that the extra-statutory warnings did not have a coercive effect on Appellant, and the trial court's ruling allowing certain expert retrograde extrapolation testimony. We affirm.

### I

Appellant was stopped for speeding in Plano on January 11, 2001. The investigating officer, James Hoke, also observed Appellant weaving, albeit Appellant safely stopped his vehicle. Appellant admitted drinking three glasses of wine, of unknown size, over an unspecified time. After conducting roadside field sobriety tests, including a portable breath test, the officer concluded Appellant was intoxicated. Appellant was taken to the city jail and requested to provide a breath sample for analysis by the Intoxilyzer 5000. Appellant expressed confusion regarding the language of the statutory warning. Officer Hoke explained to Appellant that he

was correct that a refusal to take the breath test could lead to subsequent prosecution. Appellant asked what would happen if he agreed to the test and it showed he was not within the range. Hoke responded that Appellant would be released if he was under 0.08; he would stay in jail if he was over 0.08; and he would "remain here" if Appellant refused the test. Hoke also testified he was not trying to persuade Appellant, but was providing information. Appellant assented to the test. The test showed an alcohol concentration of 0.133.

Appellant filed a motion to suppress the results of the analysis because the arresting officer told Appellant that if he passed, he would be allowed to go home.

## II

■ In his first two issues, Appellant challenges the denial of his motion to suppress the breath-alcohol test taken at the police station. Specifically, Appellant contends his consent was involuntary due to extra-statutory warnings made by the investigating officer. He argues these extra-statutory warnings arose from a series of proscribed warnings: (1) that Appellant would be released if he passed; (2) he would remain in jail if he failed; or (3) that he would remain in jail if he refused to take the test. Appellant also contends the trial court abused its discretion in finding there was no coercive effect because of the extra-statutory warnings.

The State argues, and we agree, that only alleged error preserved was the extra-statutory statement by Hoke regarding Appellant's release. In Appellant's written motion, Appellant only complained about the officer's statement that if Appellant took the test and passed, he would be released from jail. No other statement is mentioned. At the suppression hearing, Appellant specifically complained: "And then the decision breaker was the nonstat-

utory information which was if you pass, you're going home." The State appropriately argues that appellate rules require specificity. See TEX.R.APP. P 33.1(a)(1)(A). And the specific complaint to the trial court, both in the written motion and at the hearing, was essentially the same. That objection asserted that the "decision breaker" was: if Appellant passed he could go home or get released.

The trial court made several findings: (1) that the officer made extra-statutory warnings; (2) Appellant participated knowingly and at a very high intellectual level; (3) the extra-statutory statements made by the officer are factually true and contemplated by the statutory procedure; and (4) Appellant was not coerced, because the extra-statutory statements were true, logical, and natural consequences of the statutory scheme. Appellant was given and signed off on the DIC–24 form, indicating consent, although admittedly he expressed some confusion to the form.

## III

■ Appellant argues, and we agree, that we review a motion to suppress evidence by both an abuse of discretion and *de novo* standards. *Guzman v. State*, 955 S.W.2d 85, 87–91 (Tex.Crim.App.1997). Purely factual questions, based upon evaluation of credibility and demeanor of witnesses, requires application of the abuse of discretion standard. *Id.* at 89. Mixed questions of law and fact, not dependent on credibility or demeanor, are reviewed *de novo. Id.* We examine the evidence in the light most favorable to the trial court's ruling. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). In a suppression hearing, the trial court is the sole finder of fact. *Pace v. State*, 986 S.W.2d 740, 744 (Tex.App.-El Paso 1999, pet. ref'd). The trial judge may believe or disbelieve any of the evidence presented. *Id.* at 744. The

totality of circumstances is considered in determining whether the trial court's findings are supported by the record. *In re D.A.R.*, 73 S.W.3d 505, 509 (Tex.App.-El Paso 2002) (citing *Brewer v. State*, 932 S.W.2d 161, 166 (Tex.App.-El Paso 1996, no pet.)).

## IV

■ Appellant primarily relies upon *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim.App.1993). In *Erdman* the Appellant consented to the intoxilyzer test only after the trooper gave him warnings, both contemplated and not contemplated by the statute, concerning the consequences of refusal. *Id.* at 893–94. The non-statutory information given the Appellant, that he would be jailed and charged with DWI, was of a type "that would normally result in considerable psychological pressure upon a D.W.I. suspect to consent to the taking of a breath sample." *Id.* at 894. Because there was a complete absence of any record showing that this extra-statutory information given Appellant had no bearing on his decision to consent, "no rational factfinder could conclude that the State carried its burden of showing that Appellant's consent was voluntary." *Id.* The *Erdman* court found that the Appellant's consent to the intoxilyzer test was obtained in violation of Article 6701 l–5, Section 2, (now Tex. Transp. Code Ann. § 724.015 (Vernon 2003)) and therefore, inadmissable. *Id.* We distinguish *Erdman* because there is considerable other evidence that this trial court was afforded, including two video tapes[1] of Appellant's interaction with the officer, plus the officer's testimony, including statements and admissions from Appellant, and a signed consent form. If the *Erdman* court implicitly discussed the totality of the circumstances, which we believe to be part of the appropriate standard, it was that no other proof existed—i.e. the record was devoid of other evidence and circumstances showing the test to be voluntary. *See id.* at 894.[2]

The State counters Appellant's argument by citing *Sandoval v. State*, 17 S.W.3d 792 (Tex.App.-Austin 2000, pet. ref'd). *Sandoval* distinguished *Erdman* because the latter dealt with the *consequences of refusal. Id.* at 795. In *Erdman*, because the State presented no evidence showing consent was voluntary, whether the defendant was actually coerced, was not a fact question at the suppression hearing. *Id.* at 796. *Sandoval* holds "[I]t is not enough simply to show extra-statutory warnings *of any kind* were given; in the absence of an extra-statutory warning that is inherently and necessarily coercive, the defendant must also show 'a causal connection between [the] improper warning and the decision to submit to a breath test.'" *Id.* The extra-statutory warning given in *Sandoval* is virtually identical to the preserved error in this case. In *Sandoval*, the defendant was told he could go home if he passed the test. *Id.* at 796. We believe much of the reasoning in *Sandoval* is persuasive.

■ We agree that if law enforcement officials are permitted to "warn" DWI suspects by extra-statutory means, some suspects could be coerced into submission,

---

1. The first video tape, State's Exhibit 2, was admitted into evidence and is a part of the appellate record. This exhibit shows the in-car portion of the investigation, the initial conversation, and the portable breath test. State's exhibit 5, although discussed extensively by Appellant, is not part of the appellate record. The State contends Exhibit 5 was not admitted into evidence. That appears to be the case.

2. Thus, that court would have been applying a *de novo,* or matter-of-law standard.

and the protection afforded by this statutory scheme would be undermined. *Erdman* 861 S.W.2d at 894. However, we must recall that the implied consent statute provides that a person arrested for an offense arising out of acts alleged to have been committed while operating a motor vehicle in a public place, or a watercraft, while intoxicated, is deemed to have consented to the taking of samples for a breath or blood test. TEX. TRANSP. CODE ANN. § 724.011 (Vernon 2003); *see also Beeman v. State*, 86 S.W.3d 613 (Tex.Crim. App.2002). Before an officer may request a breath specimen from a person arrested for DWI, the officer must inform the person of two consequences of refusing to submit a specimen: (1) the refusal may be admissible in a subsequent prosecution; and (2) the person's driver's license will be automatically suspended. TEX. TRANSP. CODE ANN. § 724.015 (Vernon 2003). These warnings emphasize the importance of ensuring that the consent is given "freely and with a correct understanding of the actual statutory consequences of refusal." *Erdman*, 861 S.W.2d at 893. The totality of the circumstances will also include testimony, if any, from the defendant, other witnesses, video tapes, signed consents, and any other material matter before the court. *See In re D.A.R.*, 73 S.W.3d at 505. Here the trial court had wide-ranging evidence, including virtual movies of the pertinent warnings and consent, the officer's testimony, Appellant's signed consent form, and the statutory deemed consent. *See* TEX. TRANSP. CODE ANN. § 724.011 (Vernon 2003). Giving deference to the trial court's position as sole factfinder, we cannot say, under the totality of the circumstances, the trial court abused its discretion by finding the intoxilyzer test was voluntarily taken. *Guzman*, 955 S.W.2d. at 89; *In re D.A.R.*, 73 S.W.3d at 509. Appellant's first two issues are overruled.

■ In his final issue, Appellant attacks the trial court's ruling admitting the State's expert's opinion on retrograde extrapolation. Alvin Finkley, a technical supervisor, told the jury that by applying retrograde extrapolation, Appellant's blood-alcohol concentration was above 0.08 at the time of the stop. Already in evidence, were the test results indicating a blood-alcohol level at 0.133. Appellant objected, solely on the basis of relevance. Relevant evidence is evidence having any tendency to make the existence of any fact of consequence to the determination of the action more or less probable. TEX.R. EVID. 401. Clearly, to show Appellant was intoxicated at the time of the stop, sixty or ninety minutes before the intoxilyzer test, is relevant. To preserve error, a timely complaint must be made to the trial court "with sufficient specificity to make the trial court aware of the complaint." TEX.R.APP. P. 33.1(a)(1)(A). Both parties to this appeal rely on *Mata v. State*, 46 S.W.3d 902 (Tex.Crim.App.2001). In *Mata*, the grounds for objection to the retrograde extrapolation was "not reliable." *Id.* at 908. We believe the proper objection here was also that the basis of the opinion was not reliable.[3] We do not believe the relevancy objection properly preserved error. TEX.R.APP. P. 33.1(a)(1)(A).

■ Assuming, *arguendo*, that the grounds were preserved, Appellant's argument still fails. He contends that the absence of evidence concerning what Appellant had eaten, standing alone, produced error. We disagree. Here the expert

---

**3.** Appellant could also raise aspects of evidence Rules 701, 702, or 703. Likewise the objection could have been to holdings of *Mata v. State*, 46 S.W.3d 902 (Tex.Crim.App.2001); *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim. App.1992); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) or similar authority.

knew many of Appellant's personal characteristics. Finkley knew Appellant's sex, height, weight, what he drank, and how much he claimed he had to drink. This sharply contracts with the total lack of variables known in *Mata*. In *Mata*, the expert did not know the defendant's weight, how much he had to drink or what he had to drink. *Mata*, 46 S.W.3d at 905–06, 915. Some scientists even dispute whether the eating factor affects the outcome of retrograde extrapolation. *Id.* at 915–16. The *Mata* majority aptly observes: "Obviously, not every single personal fact about the defendant must be known to the expert in order to produce an extrapolation with the appropriate level of reliability." *Id.* at 916. Under the facts presented, we hold the trial court did not abuse his function as "gatekeeper" by allowing this expert testimony. *See Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). Appellant's third issue is overruled.

The judgment of the trial court is affirmed.

WITTIG, J., sitting by assignment.