**Ex parte Russell W. URQUHART.**

**No. 05–05–00673–CR.**

Court of Appeals of Texas,
Dallas.

Aug. 26, 2005.

John Hendrik, Duncanville, TX, for Appellant.

John R. Roach and M. Emily Johnson–Liu, District Attorneys, McKinney, TX, for The State.

Before Justices WRIGHT, BRIDGES, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

Russell Urquhart was convicted of driving while intoxicated. The conviction was affirmed on direct appeal. *See Urquhart v. State,* 128 S.W.3d 701 (Tex.App.-El Paso 2003, pet. ref'd). Appellant later filed an application for writ of habeas corpus asserting he received ineffective assistance of counsel at trial. *See* Tex.Code Crim.

Proc. Ann. art. 11.072 (Vernon 2005). Following a hearing, the trial court denied appellant the relief he sought. In his sole issue, appellant asserts the trial court erred in denying him relief. We affirm the trial court's order.

### BACKGROUND

Appellant was stopped for driving while intoxicated. The officer read appellant the statutory warnings contained in section 742.015 of the transportation code. *See* Tex. Transp. Code Ann. § 724.015 (Vernon Supp.2004–05). Several times, appellant questioned the arresting officer about the consequences of refusing or taking the intoxilyzer test. Although he initially told appellant he could not give an interpretation of the warning, the officer ultimately gave appellant extra-statutory information regarding the consequences of refusing, failing, and passing the intoxilyzer test. In essence, the officer told appellant he would remain in jail if he refused to take or failed the test and would be released if he passed the test. Appellant took the intoxilyzer test, which showed a result of .13. Appellant was arrested for and charged with driving while intoxicated.

Appellant's trial counsel filed a motion to suppress the intoxilyzer results, asserting the officer's extra-statutory information rendered appellant's consent involuntary. *See Erdman v. State,* 861 S.W.2d 890 (Tex.Crim.App.1993). The motion and trial counsel's argument focused on the officer having advised appellant of the consequences of passing the test. The trial judge denied the motion to suppress, finding the record showed appellant's consent to take the intoxilyzer test was voluntary. Appellant was convicted of the offense and appealed.

On appeal, the Eighth Court of Appeals[1] affirmed the trial court's judgment.

1. The appeal was transferred to the Eighth Court of Appeals pursuant to a transfer order

In doing so, the court held that appellant waived his complaint regarding the officer's information about refusing to take or failing the test because appellant focused on the officer's statements about appellant passing the test. *See Urquhart*, 128 S.W.3d at 704. The court then addressed the claim it held was preserved and concluded the record supported the trial court's finding that appellant's consent was voluntary.

Appellant's trial attorney, Keith Gore, testified at the habeas corpus hearing. Gore testified that he filed the motion to suppress the intoxilyzer results, relying on *Erdman.* Gore considered the motion to have properly raised all three extra-statutory warnings discussed in *Erdman*, that is: refusing to take, failing, and passing the test. Gore focused on the officer's statements about the consequences of appellant passing the test because appellant complained to him only about that part of the officer's extra-statutory warnings. Gore did not believe that by focusing on the one complaint he had waived the others. Gore further testified that he believed the trial judge's ruling on the motion to suppress was very specific, that he

understood it to apply to all of the issues raised regarding the refusal to take/fail/pass language, and that he did not reurge the objection due to the specificity of the ruling. Gore further testified that he did not offer the videotape into evidence because the judge spoke in detail about the tape and made very specific rulings; Gore believed the ruling covered all three extra-statutory statements; the judge mentioned the portions of the videotape to which appellant objected; and Gore did not want the videotape in evidence before the jury.[2]

Appellant testified at the habeas corpus hearing that on the night he was arrested, he was scared and was asking questions to understand what was happening. He believed the officer was getting frustrated with the questions. Appellant told Gore everything that had happened. When asked if he told his trial counsel that the only reason he took the test was because the officer told appellant he could go if he passed it, appellant responded "yes," adding "[b]ut it was a combination of things." Upon further questioning, appellant stated that this warning was not the only reason he decided to take the test.[3]

---

from the Texas Supreme Court.

2. Trial counsel was also questioned about why he did not object to the officer's warnings concerning the consequences of refusing to take or failing the test. He responded that if the trial court had granted the motion to suppress based on all three of the officer's statements about the consequences of refusing to take, failing, or passing the test, and appellant subsequently testified at trial that his consent was involuntary only because of the "pass" warning, the court could have retracted its order of suppression and admitted the results of the test to appellant's prejudice. Trial counsel also stated he believed he had an ethical duty to be candid with the court.

3. Appellant further testified as follows on direct examination:

[Counsel]: Did you tell him—bottom line, did you tell him that the only reason you didn't take it—that you took it, excuse me, was because the officer told you you could go if you took it and passed?

[Appellant]: After he told me about this, then I said: Yes. But it was a combination of things. But yes, I was just—you know—you know, I would not—I did not have any intention of taking that.

[Counsel]: Until the officer convinced you?

[Appellant]: Right. Right. Right.

[Counsel]: But the consequences of passing, was that a decision breaker for you or was that just a factor?

[Prosecutor]: Asked and answered, Your Honor.

[Court]: Overruled. You may answer.

[Appellant]: Could you ask me the question again?

## APPLICABLE LAW

 In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim.App.2003) (per curiam). We will uphold the trial court's ruling absent an abuse of discretion. *Id.* In conducting our review, we afford almost total deference to the judge's determination of the historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *Id.* We afford the same amount of deference to the trial judge's rulings on "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* If the resolution of those ultimate questions turns on an application of legal standards, we review the determination de novo. *Id.*

 To prevail on a claim of ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that: (1) counsel's performance fell below the standard of prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *See Thompson*, 9 S.W.3d at 812. Allegations of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See id.* at 813. Moreover, appellate scrutiny of trial counsel's performance must be highly deferential to avoid the deleterious effects of hindsight. *See id.*[4]

## ANALYSIS

In his sole issue, appellant asserts the trial court erred in denying habeas corpus relief because appellant's trial attorney was ineffective in waiving a valid *Erdman* objection to the officer's extra-statutory warnings about the intoxilyzer test. Appellant asserts that had counsel introduced the videotape into evidence and preserved his complaint about the officer's statements regarding the consequences of failing or refusing the intoxilyzer test, the Eighth Court of Appeals "would have been forced" to consider the consequences of

---

[Counsel]: The one little part about the officer telling you about the consequences of passing—the officer says: If you take this and pass it, I'll let you go. That one part, was that the only reason you decided?
[Prosecutor]: Objection to leading.
[Court]: Overruled. I will allow the question.
[Counsel]: Was that little part of it the only reason?
[Appellant]: No. No.

4. In *Strickland*, the Court held that "in order to determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 122 L.Ed.2d

180 (1993) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). The defendant must overcome the "presumption that ... the challenged action 'might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

The *Strickland* Court also stated, "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.

the warnings about failing or refusing the test.

The State responds that appellant suffered no prejudice because the Eighth Court of Appeals actually overruled appellant's voluntariness complaint on the merits. The State contends that, contrary to appellant's assertion, the court of appeals did not merely hold appellant did not sustain his burden of showing coercion. Rather, the court affirmatively concluded that the record supported the finding that appellant's consent to take the intoxilyzer test was voluntary. Therefore, the State argues, despite any alleged error on the part of trial counsel, the court of appeals had a separate and independent basis for rejecting appellant's complaint. Additionally, the State asserts that we are to judge trial counsel's actions based on the law and facts at the time of the trial and, in the context of the entire representation, counsel was not deficient.

The Eighth Court of Appeals held that appellant had waived any complaint except the one regarding the consequences of passing the test. *Urquhart,* 128 S.W.3d at 704. The court then addressed and distinguished the facts of *Erdman* from appellant's case. The court noted that in *Erdman,* the focus was on the warning about the consequences of refusing the intoxilyzer test. The *Erdman* court held the warning was of the type that "would normally result in considerable psychological pressure upon a D.W.I. suspect to consent to the taking of a breath sample," and there was a complete absence of anything in the record to show the extra-statutory warning had no bearing on Erdman's decision to take the intoxilyzer test. *See id.* (quoting *Erdman,* 861 S.W.2d at 894). The court concluded under the totality of the circumstances in this case, however, that there

was considerable other evidence (including the officer's testimony, appellant's signed consent form, and two videotapes that showed appellant's interaction with the officers) supporting the trial court's ruling that the consent to take the test was voluntary. *See id.* at 705–06.

Although the court of appeals did review the merits of the voluntariness issue, it did so within the context of the complaint it determined had been preserved—that the warning about the consequences of *passing* the intoxilyzer test rendered his consent involuntary. Because the court did not address the complaints regarding the warning about failing or refusing the test, we cannot read the opinion to have reached the merits of the voluntariness issue on those grounds.

■ Nevertheless, we conclude appellant has not met his burden on the second prong of *Strickland* to show the result of the proceeding would have been different.[5] *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. Appellant asserts that had counsel preserved the complaints, the Eighth Court of Appeals would have been forced to review the issues. However, the different result appellant had to show was that the court of appeals would have concluded the trial court erred in admitting the intoxilyzer results into evidence and would have reversed the conviction. *See Collum v. State,* 96 S.W.3d 361, 367 (Tex.App.-Austin 2002, no pet.).

Section 724.015 of the transportation code sets out the information an officer must give before requesting a specimen. *See* Tex. Transp. Code Ann. § 724.015. Extra-statutory information conveyed to the accused regarding the consequences of passing, failing, or refusing the test is not contemplated by the statute. *See Erd-*

---

5. Because we resolve the ineffective assistance of counsel claim by addressing the prej-udice component of *Strickland,* we need not address the performance element.

*man,* 861 S.W.2d at 893–94. Moreover, extra-statutory warnings that refusing the test would mean arrest and jailing is of the type that "would normally result in considerable psychological pressure" upon a DWI suspect to take the test. *Id.* at 894. Therefore, absent evidence in the record showing the extra-statutory warning had no bearing on appellant's decision to take the test, the intoxilyzer results would not be admissible under article 38.23. *See id.; Urquhart,* 128 S.W.3d at 706; *see also* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

The videotape shows that appellant responded intelligently to the officer's questions and also asked pertinent questions of the officer. The officer read the statutory warnings verbatim while appellant followed along on a duplicate form, using his finger to keep his place. After the officer completed the first read-through, appellant said he was not clear what his "rights were." The officer responded that he could not give appellant an interpretation of the warnings. The officer then began to read through the statutory warnings a second time, when appellant began reading the warnings aloud along with the officer. Appellant discussed the contents of the warnings with the officer and summarized what he believed the warning said about refusal to take the test. The officer confirmed the correctness of appellant's summary. Appellant asked, "If I refuse, will there be a subsequent prosecution?" The officer said, "Yes." Appellant said he did not feel comfortable "with it," and indicated his concerns as the officer read the form for a third time. Finally, in response to appellant's questioning, the officer told appellant that if he passed the test, he would be released, but if appellant failed the test or refused the test, he would "stay here." However, the officer also always referred appellant back to the statutory warnings. The officer said he was not trying to persuade appellant, and appellant replied, "Oh, no, no, no," and said he was just trying to understand. After thinking about it, appellant agreed to take the intoxilyzer test. Although appellant testified he only took the intoxilyzer test after the officer convinced him, in light of the record before it, the trial court was free to disbelieve that testimony. *See Ex parte Peterson,* 117 S.W.3d at 819.

Having reviewed the record under the appropriate standards, we conclude it supports the trial court's finding that appellant's consent to take the intoxilyzer test was voluntary and not based on the officer's extra-statutory information. Therefore, appellant did not meet his burden of showing the result would have been different on appeal had trial counsel preserved his complaints regarding the extra-statutory warnings about failing or refusing the intoxilyzer test. We conclude the trial court did not abuse its discretion in denying appellant relief and resolve appellant's issue against him.

We affirm the trial court's order denying appellant the relief sought by his application for writ of habeas corpus.