COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-433-CR

 

 

BRENT GOWE GATES                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                               STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

              ------------

I.  Introduction

Appellant Brent Gowe Gates appeals his conviction
for driving while intoxicated (DWI).  In
four points, Gates argues that the trial court erred by failing to grant a
mistrial, by admitting testimony regarding his refusal to submit to a blood
test, and by admitting evidence obtained from an allegedly illegal stop.  We will affirm.








II.  Background

On September 19, 2004, Roanoke Police Officer
Luther Cosby observed a car traveling at a high rate of speed in Denton County,
so he activated his emergency lights and pulled in behind the car.   As Officer Cosby drove behind the car, he
observed the car swerving and observed the original driver and passenger climb
over one another to switch seating positions, so that the passenger became the
driver.  The car ran over a road
construction sign and came to rest in a bar ditch.  As Officer Cosby approached the stopped car,
he instructed the driverCGates, who had been the initial
passengerCto stay in the car; but Gates
got out of the car, walked to the edge of the road, and lay down.  Officer Cosby then handcuffed Gates and
escorted him back to the car. 

Officer Cosby noticed a strong odor of alcohol
coming from inside the car and saw that Gates was having difficulty standing
and walking.  After Officer Cosby
questioned Gates and determined that Gates was the owner of the car, he
inventoried the car.  Pursuant to the
inventory search, Officer Cosby discovered an open bottle of Bud Light, a
marijuana-type bong, a 500,000 volt stun gun, a baggie of marijuana residue,
and a twelve-pack container of Bud Light with eight bottles remaining.  Officer Cosby then took Gates back to the
police station to conduct sobriety testing. 









At the police station, Officer Cosby took Gates
into the intoxilyzer room and read Gates the statutory warnings regarding
breath and blood tests.  Officer Cosby
attempted to conduct two sobriety tests on Gates, but Gates was unable to
perform the tests.  Officer Cosby
administered a breath test to Gates, and the results were negative for alcohol
consumption.  Based on Gates=s
inability to perform the sobriety tests and the negative breath test results,
Officer Cosby thought Gates might be intoxicated by a substance other than
alcohol and sought Gates=s consent to administer a blood
test. 

Gates initially, and repeatedly thereafter,
consented to the blood test.   But by the
time Officer Cosby took Gates to Denton for the testCseveral
hours after the initial consentCGates
refused to take it.  Gates was arrested
at approximately 9:36 p.m.  Gates agreed
at 11:30 p.m. and 2:00 a.m. to submit to a blood test.  But between 2:00 a.m. and 2:30 a.m. during
Gates=s
transportation to Denton County, he changed his mind about submitting to a
blood test.  Officer Cosby explained that
Gates was transported to Denton County in a patrol car with another subject and
that he heard the two discussing blood tests. 
The other subject told Gates not to submit to a blood test because drugs
would show up. 








At trial, Officer Cosby testified to the above
facts, and Gates himself testified that he did initially, and subsequently
repeatedly, consent to the blood test but that he later, ultimately refused to
consent.  The jury convicted Gates of
driving while intoxicated, and the trial court sentenced him to 160 days=
confinement, suspended for 20 months of community supervision.  This appeal followed.

III.  Reading Open Container Enhancement was Harmless
Error

In his first point, Gates alleges that the trial
court erred by denying his motion for mistrial. 
The information charged Gates with DWI and alleged a punishment
enhancement based on the discovery of an open container in the car.  See Tex.
Penal Code Ann. ' 49.04(c) (Vernon 2003).  After the State read, at the guilt-innocence
phase of trial, the open-container punishment enhancement paragraph, Gates
moved for a mistrial.  Noting that it
probably was error for the State to read the enhancement paragraph to the jury
at guilt-innocence, the trial court concluded nonetheless that any error was
harmless.[2]








We review a trial court=s ruling
on a motion for mistrial under an abuse of discretion standard.  See Ladd v. State, 3 S.W.3d 547, 567
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000).  A mistrial is a device used to halt trial
proceedings when error is so prejudicial that expenditure of further time and
expense would be wasteful and futile.  Id.  Thus, a trial court may properly exercise its
discretion to declare a mistrial if a verdict of conviction could be reached
but would have to be reversed on appeal due to an obvious procedural error in
the trial.  See Sewell v. State,
696 S.W.2d 559, 560 (Tex. Crim. App. 1983). If the error complained of
on appeal is not constitutional, as is the case here, we apply rule 44.2(b) and
disregard the error if it did not affect Gates=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).

 We agree
with Appellant that the prosecutor's reading of the open container allegation
during guilt-innocence was improper because it is not an essential element of
the offense of driving while intoxicated. 
Doneburg v. State, 44 S.W.3d 651, 655 (Tex. App.CFort
Worth 2001, pet. ref=d).  The allegation is merely an enhancement
provision, and as such it is properly reserved for the punishment phase of the
trial.  Id. (citing Wilson v.
State, 772 S.W.2d 118, 121‑23 (Tex. Crim. App. 1989) and Frausto
v. State, 642 S.W.2d 506, 509 (Tex. Crim. App. 1982)).








Consequently, we turn to the issue of harm.  See Tex.
R. App. P. 44.2(b).  At trial,
Officer Cosby testified that he discovered an open bottle of Bud Light in Gates=s
car.  Gates neither objected to nor
controverted this testimony. 
Accordingly, the information that was erroneously conveyed to the jury
through the State=s reading of the open-container
enhancement allegation was subsequently admitted without objection through
Officer Cosby=s testimony.  We cannot say that reading the enhancement
paragraph affected Gates=s substantial rights where the
jury heard the same evidence from Officer Cosby without objection.  See Mosley, 983 S.W.2d at 259; see
also Surredin v. State, 165 S.W.3d 751, 753 (Tex. App.CSan Antonio
2005, no pet.) (holding that any error in reading open-container enhancement
was harmless where evidence concerning the open container would have been
admissible during the guilt-innocence stage). 
Thus, the error in reading  the
enhancement paragraph to the jury at guilt-innocence was harmless.  See Tex.
R. App. P. 44.2(b); Surredin, 165 S.W.3d at 753.  Because the error was harmless, it would not
require reversal on appeal, so the trial court did not abuse its discretion by
denying Gates=s motion for mistrial.  See Ladd, 3 S.W.3d at 567; Sewell
696 S.W.2d at 560; see also Surredin, 165 S.W.3d at 753.

We overrule Gates=s first
point on appeal.

IV.  Admission of Refusal Testimony 








In his second and third points, Gates contends
that the trial court erred by admitting testimony regarding his refusal of the
blood test.  A trial court=s ruling
on the admissibility of evidence is reviewed under an abuse of discretion
standard.  Carrasco v. State, 154
S.W.3d 127, 129 (Tex. Crim. App. 2005). 
In other words, the appellate court must uphold the trial court=s ruling
if it is reasonably supported by the record and is correct under any theory of
law applicable to the case.  Id.

A. 
Requisite Statutory Warnings Given

In his second point, Gates contends that the
trial court erred by admitting testimony regarding his refusal to submit to
blood testing because the police did not provide him with the requisite
statutory warnings.  Before police
request consent to take a blood or breath test, they must inform the person
orally and in writing of the requisite statutory warnings delineated in the
transportation code.  See Tex. Transp. Code Ann. ' 724.015
(Vernon Supp. 2006).  If the person
refuses to give consent after receiving those statutory warnings, the State may
use such refusal as evidence against the person in a subsequent
prosecution.  Id. '
724.061.  However, the refusal is
admissible only where police give the requisite statutory warnings.  See Janak v. State, 826 S.W.2d 803,
805 (Tex. App.CTexarkana 1992, no pet.).  








Here, it is undisputed that Officer Cosby both
read and provided a written copy of the statutory warnings to Gates prior to
requesting that he submit to a blood test.[3]  Therefore, Gates=s
refusal to submit to the blood test was admissible under transportation code
section 724.061.

Nevertheless, Gates argues that police were
required to give the statutory warnings again after a five-hour lapse between
the time the warnings were initially given and the time police finally
attempted to actually administer the blood test.  But Gates repeatedly consented to the blood
test during the five-hour delay.  This is
not a situation where no discussion of the blood test occurred for five
hours.  Here, Gates continuously indicated
his willingness to consent to a blood test until he was advised otherwise by
the other subject being transported to Denton County in the patrol car with
him.  And both Officer Cosby and Gates
himself testified that Gates refused to submit to the blood test after
receiving the statutory warnings.  








Nothing in our jurisprudence indicates that
police are required to give repeated statutory warnings after a person has
repeatedly consented to a blood test.  See,
e.g., Erdman v. State, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993) (holding
only that law enforcement officials must warn suspects of the statutory
consequences before requesting consent to test); cf. Jones v. State, 119
S.W.3d 766, 774 n.13 (Tex. Crim. App. 2003) (holding that Athe mere
passage of time does not, by itself, automatically obviate prior Miranda
warnings,@ but the totality of the
circumstances will determine whether additional warnings were required).  Because the trial court=s ruling
concerning the admissibility of Gates=s
refusal is supported by the record and is correct under transportation
code section 724.015 and the cases interpreting it, we cannot say that the
trial court abused its discretion by admitting testimony of Gates=s
refusal.  See Carrasco, 154
S.W.3d at 129.  We therefore overrule
Gates=s second
point.

B.  No Objection to Voluntariness








In his third point, Gates argues that his refusal
of the blood test was not voluntary.  He
contends that the police=s failure to warn him for a
second time that his refusal to consent would be admissible against him rendered
his refusal involuntary.  To preserve a
complaint for our review, a party must have presented to the trial court a
timely request, objection, or motion that states the specific grounds for the
desired ruling if they are not apparent from the context of the request,
objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley,
983 S.W.2d at 265.  Further, the trial
court must have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s
refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004).

After seating the jury, the trial court heard
Gates=s arguments
that his refusal to submit to a blood test should not be admissible.  Gates did not object to the admission of his
refusal on voluntariness grounds. 
Because this contention was not presented to the trial court, it is not
properly before us; we overrule Gates=s third
point.  See Tex. R. App. P. 33.1(a)(1); Urquhart
v. State, 128 S.W.3d 701, 704 (Tex. App.CEl Paso
2003, pet. ref=d) (holding that defendant
failed to preserve complaint concerning voluntariness of refusal by failing to
allege in the trial court specific grounds raised on appeal).

V.  Probable Cause








In his fourth point, Gates contends that the
trial court erred by admitting evidence discovered after the stop because the
stop was made without probable cause. 
But all these complaints concerning the stop, whether constitutional,
statutory, or otherwise, are forfeited by failure to comply with rule
33.1(a).  Mendez, 138 S.W.3d at
341.  Here, the issue of the validity of
Officer Cosby=s initial stop of Gates=s car
was not challenged in the trial court. 
No motion to suppress appears in the record; the evidence seized from
the car was admitted without objection as to the propriety of the stop.  Because Gates=s
complaint regarding the alleged lack of probable cause supporting the stop of
the vehicle was not presented to the trial court, it is not properly before
us.  We overrule Gates=s fourth
point on appeal.  Id.  

VI.  Conclusion

Having overruled points one through four, we
affirm the trial court=s judgment.

 

SUE
WALKER

JUSTICE

 

PANEL A: CAYCE, C.J.;
DAUPHINOT and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: November 2,
2006











[1]See Tex. R. App. P. 47.4.





[2]The prosecutor also
conceded, AYour Honor, I would
submit to the Court that there is error, but it=s harmless error.@ 





[3]In fact, the videotape
recording from the intoxylizer room shows that Officer Cosby did warn Gates a
second timeBapproximately thirty
minutes after the initial warningCand explained that if Gates refused to consent to
the blood test that all of the things he had warned Gates of before would or
could happen.