**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00016-CR**
_____

**EX PARTE MICAH THOMPSON**

**On Appeal from the 260th District Court
Orange County, Texas
Trial Cause No. D170375-R**

**MEMORANDUM OPINION**

Appellant Micah Thompson (Appellant or Thompson) appeals the denial of

his post-conviction application for writ of habeas corpus, in which he alleged he was

denied the effective assistance of counsel and requested that he be allowed to file an

out-of-time appeal. We affirm.

Factual Background

On December 10, 2014, a jury found Thompson, a juvenile at the time, beyond

a reasonable doubt to have engaged in delinquent conduct in that he committed four

counts of aggravated sexual assault of a child. The jury assessed punishment at

confinement for a term of ten years but elected to grant Thompson probation. On December 11, 2014, the juvenile court placed Thompson on probation for seven years with no less than twelve months of Intensive Supervision Probation, subject to extensions not to exceed a total probation time of ten years. A document titled "Explanation of Rights" explaining, among other things, Thompson's right to appeal is in the appellate record, and it includes a notation initialed by the juvenile court judge that the portion of the form about Thompson's right to appeal was "[r]ead to Juv at disposition" on December 11, 2014. On April 2, 2015, an Application for Directive to Apprehend was filed by the State, alleging that Thompson violated a condition of his probation. On April 19, 2017, the juvenile court signed an Order Transferring the Determinate Sentence Probation to an Appropriate District Court.

On July 24, 2017, Thompson filed a Writ of Habeas Corpus pursuant to article 11.08 of the Texas Code of Criminal Procedure, alleging that he was denied effective assistance of counsel by the failure of his trial counsel for the juvenile proceeding "to perfect and pursue [Thompson's] direct appeal[,]" and requesting an order granting an out-of-time direct appeal. The case was transferred to the 260th District Court and the district court held a hearing on the application for writ of habeas corpus.

At the hearing, Thompson's mother testified that she retained Thompson's trial counsel to represent him in the juvenile matter. During direct examination, Thompson's mother testified that after the adverse verdict at the trial in December 2014, she was sitting behind Thompson and his trial counsel and Thompson's counsel turned around and said, "We can appeal." According to Thompson's mother, she and Thompson had intentions to appeal, did not know anything about the appeal process, and presumed Thompson's counsel would be pursuing the appeal. Thompson's mother agreed that she texted Thompson's trial counsel for the juvenile proceeding in late January, after the time had expired for giving notice of appeal, and asked if he was still "going to be the lawyer[.]" Thompson's mother believed that Thompson's trial counsel for the juvenile proceeding "had taken care of the paperwork . . . or whatever he had to do for the appeal." She later learned that he was not representing her son on appeal and that he was taking a job at the Jefferson County District Attorney's Office. On cross-examination, Thompson's mother agreed that she knew in December that her son's trial counsel for the juvenile proceeding was going to work at the district attorney's office. She agreed that in her affidavit in support of the writ she had stated that trial counsel told her, "We will appeal." She admitted at the habeas hearing that it was "four years ago[]" and she was "trying to recall[]" whether Thompson's trial counsel said, "We will appeal" or

3

"We can appeal." According to Thompson's mother, she realized in January 2015 that no appeal had been pursued. Thompson's mother testified that in April 2015 there was a hearing about Thompson's failure to follow the terms of his probation, and Thompson had different appointed counsel in that hearing. Thompson's mother also testified that she hired a different attorney in April 2015 to file a writ, but the writ was not filed by the new attorney until July 21, 2017.[1] According to Thompson's mother, in October 2015, she hired a different attorney to represent Thompson in a Motion to Modify. Thompson's mother stated that she did not discuss an appeal with the appointed counsel or the attorney she hired to represent her son in the Motion to Modify because they were Thompson's counsel for "something totally different[.]"

In Thompson's mother's affidavit, which was admitted into evidence at the habeas hearing, she alleged the following:

> . . . Towards the end of our wait [for sentencing], [trial counsel in the juvenile proceeding] came to the table and asked me "What about the financial part of the appeal?". He stated that it would be expensive. I told him I could handle it and I would do what I had to do.
> . . .
> I assumed [trial counsel in the juvenile proceeding] was taking care of the letter of appeal. He was still Micah's attorney, and I assumed he was taking care of him on his end, while we took care of the list of things we had to do. I did not hear of a time frame for the appeal, only for my list of things to do. Micah and I definitely wanted to appeal and

---

[1] State's counsel represented to the habeas court during the hearing that on February 14, 2017, a motion was filed to transfer Thompson's juvenile case to the adult system.

4

thought [trial counsel for the juvenile proceeding] was taking care of the appeal for us. It was only long after all the time periods to appeal had passed that we learned he did not have an appeal and [trial counsel for the juvenile proceeding] had not filed the appeal.

A family friend of Thompson's testified that he was present for the 2014 trial and he has known Thompson since Thompson was five years old. He testified as follows:

> . . . After the verdict, obviously, the family was upset; and I didn't agree with the verdict. But I recall [Thompson's mother] asking [trial counsel] "What do we do now?"
>    And he said, "We can appeal[.]" . . . Or no, actually he said "We will appeal."

According to the family friend, he heard Thompson's mother express her intention that she wanted to appeal, but he overheard no other discussions about cost. In an affidavit admitted at the habeas proceeding, the family friend stated that "[w]e were all with the understanding that [trial counsel for the juvenile proceeding] would appeal and perform his duties as Micah's attorney[,]" Thompson or his mother never told the trial counsel for the juvenile proceeding not to appeal in the family friend's presence, and he did not hear any attorney or judge say anything about having a time limit to appeal.

Thompson's affidavit, admitted into evidence at the habeas hearing, stated in pertinent part:

The jury went in the room and a few hours went by and they came out and said I was guilty. I was shocked, everything went quiet, I don't remember much of anything else but the jury went back, then came out and said I was going home. [Trial counsel for the juvenile proceeding] said we can appeal and I said okay. . . . I did not understand anything about an appeal but [he] told me we would appeal. My mom thought [he] was handling the appeal. We found out later that he was not handling the appeal and I did not get an appeal even though we thought I had one.

Thompson's grandfather's affidavit admitted into evidence stated the following:

. . . I attended [Thompson's] trial in December, 2014[.]
After the first break, I questioned Micah's lawyer . . . about some things I thought he left out in his cross examination. He said he knew that, but he already had enough for an appeal. During lunch break, I asked [trial counsel for the juvenile proceeding] what he thought Micah's chances were. He said that "it was looking very good, up to this point, because there had not been any evidence presented".
When lunch was over, court started again. After the last two witnesses were cross-examined, and both lawyers presented their closing arguments, the jury left to decide Micah's verdict. I asked [trial counsel for the juvenile proceeding] about some discrepancy with the last two witnesses concerning the DNA. [He] said "he knew that" and if Micah was found guilty, that he had more than enough to file an appeal.
[Trial counsel for the juvenile proceeding] never told me that there was only 30 days to file an appeal, nor d[i]d I hear him tell [Thompson's mother] or anybody else anything about 30 days to file an appeal.

The affidavit of Thompson's trial counsel for the juvenile proceeding was also admitted into evidence without objection. Therein, the attorney states

6

. . . This affidavit is being made in response to a Writ of Habeas Corpus filed by Micah Thompson alleging ineffective assistance of counsel for not filing an appeal in his case.

I was unable to locate the file in this case from 4 years ago so this affidavit is based upon memory and my common practices as an attorney. I remember the case we are discussing, but details of the trial are elusive after all this time. I begin this affidavit by saying that Micah Thompson did have issues that I believed were appealable. I remember there being issues, just not the exact issues.

I remember having a discussion, as I always do, with Micah and his family after the trial. . . . I do not recall a specific discussion concerning the details of how an appeal would occur and there is a reason for that.

I have a common practice after trials. I inform the family that there is a right to appeal and then give them my opinion whether there are issues that I believe can be appealed without going into too much detail due to the timing. Parents and the client are usually in either shock or are extremely upset about the outcome. It is not the best time to go into detail concerning the ins and outs of an appeal or the financial aspects. I always tell clients to make an appointment in the next few days after they have time to calm down to discuss the appeal. I tell them within the next week so that we have time to decide which way to proceed. I do this so that decisions aren't made under all the stress of the situation.

I do not recall an appointment ever being made during the time which I would expect them to call. I did not begin work at the District Attorney's Office until March 1st. No one called to discuss finances that I recall nor did they call to check the status of the appeal. If an appointment would have been made and we had discussed the appeal, I would usually recommend that another attorney do the appeal so that they could objectively look at the record and evaluate the trial independently. I even refer people to attorneys including the attorney who filed this writ.

I did not intentionally not file an appeal. If there was a misunderstanding as to the path that should have been taken to effectively communicate to me that Micah and his parents truly wished to pursue an appeal, I would hope the court would grant an out of time appeal.

On December 13, 2018, the habeas court entered findings of fact and conclusions of law:

## Findings of Fact

1. On December 10, 2014, Applicant, Micah Thompson, was adjudicated of a delinquent conduct offense, namely Four Felony Counts of Aggravated Sexual Assault of a Child and was sentenced to Ten (10) years and was placed on Seven (7) years probation[.]
2. On April 19, 2017, an Order Transferring the Determinate Sentence Probation to an Appropriate District Court was signed by the Juvenile Court[.]
3. The case was transferred to the 260th District Court under the above cause number[.]
4. On July 24, 2017, Applicant filed a Writ of Habeas Corpus seeking an out of time appeal alleging ineffective assistance of counsel for failing to advise Applicant of certain time limits for perfecting an appeal[.]
5. Trial Counsel advised Applicant and his family that there was a right to appeal and told them to make an appointment in the next few days to discuss the appeal, but he did not hear anything about the appeal for almost 4 years[.] (Affidavit of trial counsel is attached)[.]

## Conclusions of Law

1. Applicant received effective assistance of counsel[.]
2. Neither Applicant nor his family contacted trial counsel to discuss appeal for over 3 years after the jury verdict[.]
3. Applicant's requested relief is denied.

## Issue on Appeal

In one appellate issue, Thompson argues that the habeas trial court erred in failing to grant him an out-of-time appeal. According to Thompson, "[t]he trial court erroneously relied on only a portion of an affidavit from trial counsel to deny relief,

and ignored the overwhelming evidence to support an out-of-time appeal." Thompson argues he was denied his right to effective assistance of counsel to which he was entitled to perfect direct appeal.

Standard of Review

"We generally review a trial court's decision to grant or deny relief on a writ of habeas corpus under an abuse of discretion standard[.]" *Ex parte Cummins*, 169 S.W.3d 752, 755 (Tex. App.—Fort Worth 2005, no pet.). The trial court abuses its discretion if it acts without reference to any guiding principles or acts arbitrarily or unreasonably. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citing *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241-42 (Tex. 1985)). In reviewing the trial court's decision, we review the facts in the light most favorable to the trial judge's ruling. *See Ex parte Peterson*, 177 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007). We "'afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Peterson*, 117 S.W.3d at 819 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *see also Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

"We afford the same amount of deference to the trial judge's rulings on 'application of law to fact questions' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. If the resolution of those ultimate questions turns on an application of legal standards, we review the determination de novo." *Ex parte Urquhart*, 170 S.W.3d 280, 283 (Tex. App.—Dallas 2005, no pet.) (citing *Peterson*, 177 S.W.3d at 819). We are not bound by the habeas judge's findings of fact. *Ex parte Brandley*, 781 S.W.2d 886, 887 (Tex. Crim. App. 1989). Our duty is to determine whether the record supports those findings. *See Ex parte Watkins*, 770 S.W.2d 816, 818 (Tex. Crim. App. 1989); *Ex parte Adams*, 768 S.W.2d 281, 288 (Tex. Crim. App. 1989). Generally, if the trial judge's findings are supported by the record, they should be accepted by this Court. *Ex parte Castellano*, 863 S.W.2d 476, 485-86 (Tex. Crim. App. 1993). "[R]egardless of whether the trial judge personally views the witnesses testifying live, a reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit[.]" *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005) (Cochran, J., concurring) (citing *Manzi v. State*, 88 S.W.3d 240, 242-44 (Tex. Crim. App. 2002) (giving great deference to trial court's factual determinations based on affidavits because "a trial court's rulings on questions of purely historical fact have traditionally been given deference even absent credibility determinations"; "the fact

10

remains that it is traditionally the role of the trial court to resolve issues of historical fact, whether or not credibility and demeanor determinations are involved.")). An applicant for habeas corpus must prove his allegations by a preponderance of the evidence. *See Ex parte Galvan*, 770 S.W.2d 822, 823 (Tex. Crim. App. 1989).

Effective Assistance of Counsel

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, Thompson must establish that (1) trial counsel's representation fell below the objective standard of reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *See id.* at 687-88, 694; *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010); *Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (adopting *Strickland* standard for ineffective assistance claims under the Texas Constitution.) An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *See Perez*, 310 S.W.3d at 893; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

11

When determining the validity of a defendant's claim of ineffective assistance of counsel, our review must be "highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel was motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); *Chambers v. State*, 903 S.W.2d 21, 32-33 (Tex. Crim. App. 1995); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome the presumption of reasonable professional assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The appropriate context is the totality of the representation. *See Thompson*, 9 S.W.3d at 813; *Solis v. State*, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990).

Trial counsel has the responsibility to consult with and advise the client about the meaning and effect of the judgment rendered by the court, the right to appeal from the judgment, the need to give notice of appeal and taking other steps to pursue

an appeal, as well as expressing counsel's professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal. *See Ex parte Axel*, 757 S.W.2d 369, 374 (Tex. Crim. App. 1988). Trial counsel's responsibilities consist of a two-step process. *See Jones v. State*, 98 S.W.3d 700, 703 (Tex. Crim. App. 2003). First, the attorney must determine whether the defendant wishes to appeal. *Id*. The decision to appeal lies solely with the defendant; and, the attorney's duty is to advise him about the matters described above. *Id.*; *see also Axel*, 757 S.W.2d at 374 ("The decision to appeal belongs to the client."). If the defendant does not wish to appeal, trial counsel's representation ends. *See Jones*, 98 S.W.3d at 703.

The affidavit from Thompson's trial counsel for the juvenile proceeding states that due to the four-year span from the trial date and the habeas hearing, he was unable to remember specifically what transpired. However, he did state that his common practice after trials is to inform the family that there is a right to appeal and then give them his opinion whether there are issues that he believes can be appealed. He explained in his affidavit that he always tells clients to make an appointment in the next few days after they have time to calm down to discuss the appeal. He stated in his affidavit that as to this particular case he does not recall an appointment ever being made to discuss the appeal, that he does not recall anyone calling him to

13

discuss finances or to check the status of the appeal, and that if an appointment had been made to discuss the appeal his common practice would have been to recommend the client hire another attorney for the appeal.

Thompson's mother testified at the habeas hearing that she did not contact her son's trial counsel for the juvenile proceeding until late January after punishment was assessed on December 11, 2014. At first Thompson's mother testified at the habeas hearing that after the verdict her son's counsel stated "We can appeal." On cross-examination she admitted she was "trying to recall[]" what the attorney said and she testified that her son's counsel stated "We will appeal[,]" consistent with her affidavit. She also admitted she never discussed an appeal with the other two attorneys who were representing her son in his juvenile case during the timeframe after his punishment was assessed and until the date after the appellate deadline expired. As stated above, we afford almost total deference to the trial court's determination of the historical facts that the record supports when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. The habeas court's findings of fact—including the finding that trial counsel advised Thompson and his family that there was a right to appeal and to make an appointment in the next few days to discuss the appeal, but he did not hear anything about the appeal for almost four years—are supported by the record.

14

Accordingly, we accept the trial court's finding. *See Castellano*, 863 S.W.2d at 485-86.

We accept the trial court's finding of facts because they are supported by the record. Next, we examine the trial court's application of the law to the facts.

The trial court found that Thompson received effective assistance of counsel. We must "afford the same amount of deference to the trial judge's rulings on 'application of law to fact questions' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Urquhart*, 170 S.W.3d at 283. Otherwise "[i]f the resolution of those ultimate questions turns on an application of legal standards, we review the determination de novo." *Id*. We find that the resolution of the application of the law to the facts also involves an evaluation of the credibility of the witnesses.

On the record before us, we conclude that Thompson has failed to meet his burden of proof to establish that his trial counsel's representation fell below the objective standard of reasonableness, based on prevailing professional norms. *See Thompson*, 9 S.W.3d at 814; *Ex parte O'Neal*, No. 09-15-00229-CR, 2015 Tex. App. LEXIS 9885, at **12-16 (Tex. App.—Beaumont Sept. 23, 2015, pet. ref'd) (mem. op. not designated for publication); *cf. Axel*, 757 S.W.2d at 371, 374-75 (finding deficient performance by trial counsel who had been informed after verdict that

15

defendant wanted to appeal, briefly discussed possibility of taking an appeal with defendant, did not withdraw his representation, did not respond to defendant's subsequent attempt to contact him about appealing, and failed to file a notice of appeal). When an appellant fails to satisfy one prong of the *Strickland* test, a court need not consider the other prong. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 697). We overrule Thompson's appellate issue. Viewing the facts in a light most favorable to the trial court's ruling, we affirm the trial court's denial of Thompson's application for habeas relief. *See Peterson*, 117 S.W.3d at 819; *Cummins*, 169 S.W.3d at 755.

    AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 10, 2019
Opinion Delivered July 24, 2019
Do Not Publish

Before Kreger, Horton and Johnson, JJ.