COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-08-00019-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 292nd District Court |
| HENRY SHELTON, | § | |
| | | of Dallas County, Texas |
| Appellee. | § | |
| | | (TC# F06-63932-V) |
| | § | |

## O P I N I O N

In separate cases, Appellee was charged with possession of cocaine and possession of methamphetamine, each arising from the same facts. Appellee moved to suppress the illegal narcotics alleging that his investigative detention was made without reasonable suspicion and that the warrantless search, and the fruits thereof, were illegal. Following an evidentiary hearing, the trial court granted Appellee's motion. The State now appeals the trial court's order granting Appellee's motion to suppress. We reverse and remand for further proceedings.

## BACKGROUND

The following evidence was elicited at the evidentiary hearing. Officer Joseph Allen, a near-nine-year veteran of the Dallas Police Department, and two other officers, were part of a "no-tolerance" patrol unit known as Operation Disruption, which deployed officers into high-crime areas for the purpose of reducing crime. On March 24, 2006, the three officers were in a marked squad car patrolling an area of Dallas known for prostitution, violent crime, and drug activity for the purpose of disrupting any illegal activity. At approximately 10:30 p.m., the officers pulled into the driveway of a motel that was well-known for violent crime, prostitution, and drug use. The officers

observed the area for several minutes and then proceeded down the driveway where they saw three individuals sitting for a length of time in a legally-parked truck. Officer Allen considered these circumstances to be suspicious because the truck was not running, did not have its headlights on, did not appear to be leaving or to have recently arrived, and the occupants were not moving inside the vehicle. Additionally, no one left the truck to enter a room and no one exited from a room to approach the truck. Although there was sufficient room for the occupants in the truck to leave the parking lot, they did not do so during the four- to five-minute period when the officers were observing them. The officers shone a spotlight on the truck and observed Appellee in the driver's seat and two young women in the cab of the truck making furtive gestures and moving around as if trying to hide something. Officer Allen thought that Appellee may have been attempting to cover himself or pull up his pants. Due to the time of night and the circumstances of his observations, Officer Allen believed that prostitution or another lewd act was occurring in the truck. The officers decided to make contact with the occupants in the truck. Without activating the overhead lights, the officers parked the squad car perpendicular to Appellee's truck, in order to make a stop and to keep the occupants from leaving. Officer Allen testified that, although they did not want Appellee to leave at that point, if Appellee had attempted to drive away, the officers would have investigated the license plate information to see if the vehicle was stolen. Officer Allen disagreed that Appellee's decision to stay in the parking lot was more consistent with innocent activity than if Appellee had decided to drive away.

Officer Allen approached Appellee while the two other officers approached the women who were seated in the truck. As the officers approached the truck, it became apparent that the women in the truck looked relatively young. The other officers spoke with the females and then removed them from the vehicle in order to determine whether or not their clothing was in disarray. The

officers determined that the females were 15 and 17 years old, that Appellee was 43 years old, and that they barely knew each other. Although Officer Allen observed that Appellee's clothes were not in disarray after approaching the truck, he asked Appellee his name, date of birth, and other identifying information and why Appellee was in the parking lot. Appellee indicated that he was there with his friends, the two girls, and they were visiting a friend. During the interview, the three indicated that they had no business there other than to meet a friend, but the girls could not name any friends who were staying at the motel. Appellee and the girls gave conflicting information to the officers, and Appellee did not know the girls' last names or where they lived. Even though Officer Allen could not determine whether or not the three had been engaged in any sexual activity, he thought, once he learned the girls' ages, something more may have been occurring. Officer Allen felt it was necessary to investigate the situation a bit longer given that Appellee, a 43-year-old man, was sitting in a truck with two young females at night in a motel parking lot located in an area of town with a bad reputation for drugs, prostitution, and other criminal activity, and he was concerned that other crimes were at issue. Officer Allen testified that he and the other officers continued the investigation because they did not know if Appellee had abducted or picked up the girls recently, if he intended to or had already done harm to them, if the girls were not being forthcoming because they felt that they were in danger, or if the girls were runaways.

Although the officers were unable at the time of the initial encounter to determine that Appellee had done anything wrong, because Appellee was exhibiting extreme nervousness, because of the time of night and other circumstances, and because of the furtive gestures, Officer Allen removed Appellee from the truck and conducted a pat down for weapons to ensure his safety. Officer Allen testified that as a result of his training, it is common practice to search for weapons in order to preserve officer safety when a person is acting more nervous than they should as a result of

contact with police.

During the pat-down search, Officer Allen observed what he thought was the top part of a syringe protruding about one-inch from Appellee's front left pants pocket. Because a syringe with a needle can harm a person who is frisking for weapons, Officer Allen removed the item from Appellee's pocket and discovered that the item was not a syringe but, instead, was a 2 ½ -3 inch straw with white residue on the interior and with one end cut at a 45-degree angle. Based on his training and experience, Officer Allen determined that the straw constituted drug paraphernalia. Officer Allen then placed Appellee under arrest for possessing drug paraphernalia and, incident thereto, searched Appellee and his truck. On Appellee's person, Officer Allen found a tin can in which two small baggies were located, one containing cocaine and the other methamphetamine. A .22 caliber handgun was also found in the bed of Appellee's truck. Officer Allen stated that he did know about the gun at the time of his initial encounter with Appellee. Appellee was placed under arrest for possession of cocaine and methamphetamine.

At the conclusion of the evidentiary hearing, the trial court stated that it believed Officer Allen's testimony but nevertheless granted Appellee's motion to suppress. The State thereafter filed a motion for reconsideration, which was overruled by operation of law.

As requested by the State, the trial court issued written findings of fact and conclusions of law in support of its ruling. The trial court specifically determined that: (1) Officer Allen's descriptions of the furtive gestures were speculative and not fact based; (2) there was no basis in fact to support Officer Allen's belief that some form of prostitution or lewd conduct was occurring; (3) Appellee's gestures were as consistent with innocent activity as with illegal activity; (4) Officer Allen had no legal basis to stop Appellee had he chosen to drive away from the scene; (5) although Officer Allen did not observe any illegal activity, he approached the driver's side of the truck for

further investigation; (6) Appellee's nervousness, standing alone, did not justify his detention; (7) Officer Allen had no articulable facts to suspect Appellee had been or was involved in any illegal activity; (8) there was no factual basis for believing Appellee posed a threat to Officer Allen; (9) Officer Allen had no lawful authority to order Appellee to exit his vehicle; (10) Officer Allen's initial investigation was proper; (11) upon determining that no illegal activity was occurring, Officer Allen had no right to detain or arrest Appellee; and (12) all actions of Officer Allen after the initial detention and arrest were the products of an illegal search and seizure of Appellee.

## DISCUSSION

In its sole issue on appeal, the State alleges that the trial court committed error when it granted Appellee's motion to suppress evidence. We agree.

### Standard of Review

We review a trial court's ruling on a motion to suppress based upon an alleged lack of probable cause or reasonable suspicion using the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000), *citing Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); *Krug v. State*, 86 S.W.3d 764, 765 (Tex. App.–El Paso 2002, pet. ref'd); *Urquhart v. State*, 128 S.W.3d 701, 704-05 (Tex. App.–El Paso 2003, pet. ref'd). In a suppression hearing, the trial court is the sole finder of fact and may believe or disbelieve any of the evidence presented. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); *Pace v. State*, 986 S.W.2d 740, 744 (Tex. App.–El Paso 1999, pet. ref'd).

When a trial court files findings of fact and conclusions of law, the court's findings of fact will not be disturbed on appeal absent an abuse of discretion. *State v. Wood*, 828 S.W.2d 471, 474 (Tex. App.–El Paso 1992, no writ); *see also Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App.

1991) (trial court's findings should not be disturbed absent clear abuse of discretion). We afford almost total deference to the trial court's express or implied determination of historical facts and review *de novo* the court's application of Fourth Amendment search and seizure law to those facts. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche*, 10 S.W.3d at 327; *Krug*, 86 S.W.3d at 765; *Urquhart*, 128 S.W.3d at 704-05. Such deference is also afforded to determinations of mixed questions of law and fact when their resolution depended on witness credibility and demeanor. *Ross*, 32 S.W.3d at 856. However, mixed questions of law and fact that do not turn on witness credibility and demeanor are reviewed *de novo*. *Id.*

*Applicable Law*

Terry Stops and Reasonable Suspicion

Three categories of interactions between officers and citizens exist: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002), *citing Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). An encounter is a friendly exchange of pleasantries or useful information. *Terry v. Ohio*, 392 U.S. 1, 13, 22, 88 S.Ct. 1868, 1875-76, 1880, 20 L.Ed.2d 889 (1968). Police are not required to possess any particular level of suspicion before interacting with a citizen in an encounter because the citizen is under no compulsion to remain. *Hawkins v. State*, 758 S.W.2d 255, 259 (Tex. Crim. App. 1988); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex. Crim. App. 1986). Moreover, a police officer "do[es] not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Perez*, 85 S.W.3d at 819, *citing Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In short, an encounter is a seizure-free interaction between an officer and a citizen, and

because the citizen is under no compulsion to remain, an officer is not required to possess any particular level of suspicion. *Hawkins*, 758 S.W.2d at 259; *Daniels*, 718 S.W.2d at 704.

In an investigative detention, law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry*, 392 U.S. at 22, 88 S.Ct.at 1880. Under the Fourth Amendment and the *Terry* line of cases, the U.S. Supreme Court has held that an officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 30, 88 S.Ct.at 1885; *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150, 126 S.Ct. 1172 (2006); *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The level of suspicion, however, is considerably less than proof of wrongdoing by a preponderance of the evidence and need not rise to the level of probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). "Reasonableness," under Fourth Amendment standards, is a fact-specific inquiry measured in objective terms by examining the totality of the circumstances. *Kothe*, 152 S.W.3d at 63. The concept of reasonable suspicion is not readily, or even usefully, reduced to a neat set of legal rules and in evaluating the validity of such a stop, we must make a fact-specific inquiry measured in objective terms by considering the totality of the circumstances, that is, the whole picture. *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996); *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Kothe*, 152 S.W.3d at 63. A determination of reasonable suspicion must be based on common sense

judgments and inferences about human behavior as well. *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 676.

While a person's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime, officers are not required to ignore the relevant characteristics of a location in determining whether or not the circumstances are sufficiently suspicious to warrant further investigations. *Wardlow*, 528 U.S. at 124, 120 S.Ct. at 676, *citing Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Adams v. Williams*, 407 U.S. 143, 144, 147-48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Where conduct justifying a stop is ambiguous and susceptible of an innocent explanation, officers may detain an individual for the purpose of resolving the ambiguity. *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 677; *Terry*, 392 U.S. at 5-6, 30, 88 S.Ct. at 1871-72, 1884. A series of acts, each of them perhaps innocent when viewed separately, may warrant further investigation when considered together. *Sokolow*, 490 U.S. at 9, 109 S.Ct. at 1586. When reviewing the totality of the circumstances, we must see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing, and this process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002); *see, e.g., Cortez*, 449 U.S. at 417-18, 101 S.Ct. at 695.

Protective Search for Weapons

Even in the absence of probable cause, an officer is permitted to conduct a limited search of a suspect's outer clothing to locate weapons, when an officer reasonably believes that the suspect is armed and dangerous to the officer or others in the area. *Carmouche*, 10 S.W.3d at 329. The

purpose of the search is to allow the officer to pursue his investigation without fear of violence, rather than to discover weapons. *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002), *citing Adams,* 407 U.S. at 146, 92 S.Ct. at 1923. However, an officer need not be absolutely certain that an individual is armed before conducting the search as the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger. *Balentine*, 71 S.W.3d at 769, *citing O'Hara* v. *State,* 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). To support a protective frisk or detention, there must be facts that, when reviewed under an objective standard, would cause a reasonably cautious person to believe that the action taken was reasonable or that the person frisked was presently armed and dangerous. *State v. Sheppard*, 271 S.W.3d 281, 287-88 (Tex. Crim. App. 2008), *citing O'Hara* v. *State,* 27 S.W.3d at 551 (regardless of whether a police officer states that he was afraid of the suspect, the validity of the search must be analyzed by determining whether the facts available to the officer at the time of the search would warrant a reasonably cautious person to believe that the action taken was appropriate). A failure to articulate a lawful basis for the frisk does not mean it was illegal. *Sheppard*, 271 S.W.3d at 288, *citing United States v. Wallen*, 388 F.3d 161, 167 (5th Cir. 2004) (the subjective motivations of police are irrelevant to determining whether a search or seizure is reasonable under the Fourth Amendment).

*Application of Law to Facts*

In this case, the trial court determined that Officer Allen's initial investigation to determine whether Appellee was involved in prostitution or lewd conduct was proper. The trial court then concluded that it was improper for Officer Allen to detain or arrest Appellee upon making that determination that no illegal activity was occurring, and as a result, suppressed all evidence resulting from the detention and arrest.

Deferring to the trial court's determination that he believed Officer Allen's testimony, the

record shows that upon initially encountering Appellee who was seated in the vehicle and seeing that his clothes were not in disarray, Officer Allen's concerns about possible prostitution and lewd behavior taking place in the vehicle were dispelled. This encounter was consensual and did not rise to the level of an investigative detention. *Terry*, 392 U.S. at 13, 22, 88 S.Ct. at 1875-76, 1880; *Perez*, 85 S.W.3d at 819, *citing Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386.

Although his initial suspicion that Appellee may have been involved in prostitution or another lewd act dissipated during the initial encounter, the new information Officer Allen and the other officers learned from the encounter, especially when considered in light of the remaining circumstances, gave rise to new and different suspicions. In sum, at that point, Officer Allen knew that Appellee, a 43-year-old man, was nervous and alone at 10:30 in the evening with two girls 15 and 17 years old in a truck outside of a motel, in an area that was known for its crime, prostitution, and drug activity. He additionally knew that Appellee, who claimed that the girls were his friends, did not know their full names, nor where they lived. In fact, the girls did not know each other. Officer Allen at that timed formed a reasonable suspicion that other crimes may be "at issue," including the possibilities that the girls had been abducted by Appellee, that Appellee may have intended to or may have already harmed the girls, and that the girls may possibly be runaways.

Applying the appropriate "totality of the circumstances" analysis in a *de novo* review, we find that the trial court erred when it concluded that Officer Allen's detention of Appellee was improper. *Ross,* 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *Krug*, 86 S.W.3d at 765; *Urquhart*, 128 S.W.3d at 704-05. Based upon a totality of the circumstances, we find that Officer Allen had reasonable suspicion to detain Appellee for the purpose of investigating and resolving the ambiguities arising from the initial encounter and determining whether Appellee's conduct was susceptible of an innocent explanation. *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329; *Cortez*, 449 U.S.

at 417, 101 S.Ct. at 695; *Kothe*, 152 S.W.3d at 62-63.

These facts also form the basis for reviewing whether Officer Allen's frisk of Appellee for weapons was proper. In analyzing the validity of the search, we must determine whether or not the facts available to the officer at the time of the search would warrant a reasonably cautious person to believe that the action taken, the frisk, was appropriate. The frisk took place in an area known for its prostitution, drug use, and violent crimes and, indeed, the three officers were deployed as part of a patrol unit designated to disrupt such activities. In this location, Appellee was found to be in the company of two young girls, some twenty-seven years his junior, whose names he did not fully know. Appellee did not know where the girls lived and the girls did not know each other. Appellee and the girls were outside of a motel and everyone appeared very nervous. Appellee and the girls provided conflicting stories and had made furtive gestures. Viewed objectively, we find that these facts as they existed at the time of the search would warrant a reasonably cautious person to believe that Officer Allen's protective search was appropriate. *Terry*, 392 U.S. at 5-6, 21-22, 30, 88 S.Ct. at 1871, 1879-80, 1884; *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 676-77.

During the search, Officer Allen saw and removed an item that he believed to be a syringe and, thus, potentially harmful to him. Upon removal, the item was found to be a short straw with residue and was considered to be drug paraphernalia. At that time, Officer Allen was authorized to arrest Appellee for possession of drug paraphernalia and search him incident to the arrest. TEX. HEALTH & SAFETY CODE ANN. § 481.125 (Vernon 2003); *State v. Ballard,* 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) (once an officer has probable cause to arrest, he may conduct a search incident to that arrest; it is irrelevant that the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search). The contraband found as result of the search incident to Appellee's arrest led to the underlying charge in this case.

Because the objective facts support the appropriateness of the pat-down search for weapons, we find that the trial court erred in concluding that the weapons search of Appellee's person and the contraband found as a consequence thereof were illegal.  Accordingly, we sustain the State's sole issue.

## CONCLUSION

The trial court's order granting the motion to suppress is reversed and the cause is remanded for further proceedings.


                                        GUADALUPE RIVERA, Justice

February 10, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)