

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ESTELLA SOTO MARTINEZ, | § | No. 08-23-00006-CR |
| Appellant, | § | Appeal from the |
| v. | § | 120th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20190D05626) |

## MEMORANDUM OPINION

After hearing evidence presented in the guilt-innocence phase of trial, a jury found appellant Estella Soto Martinez guilty of misapplication of fiduciary property, theft, and forgery of a financial instrument. *See* TEX. PENAL CODE ANN. §§ 32.45(c)(5), 31.03(e)(5), 32.21(d). The trial court subsequently assessed punishment at ten years' imprisonment on the first two offenses, and two years' imprisonment on the third offense, with all sentences running concurrently. Martinez brings four issues on appeal. Finding no error, we affirm.

## BACKGROUND

By a three-count indictment, Martinez was charged with misapplication of fiduciary property in the aggregate amount of $30,000 or more but less than $150,000 (Count I), theft of property in the aggregate amount of $30,000 or more but less than $150,000 (Count II), and forgery

of a financial instrument (Count III). The charges all stem from her employment as a bookkeeper working for VIBA Transportation (VIBA), a non-emergency medical-transportation company owned by Roberto Wallace.

Prior to trial, Martinez filed two motions relevant to this appeal. First, she moved to generally suppress all evidence the State had planned to introduce at trial, contending the evidence was obtained without probable cause and without a valid warrant. Second, she moved for a *Daubert/Kelly* hearing for expert witnesses who may be called to testify as experts under Rule 702 of the Texas Rules of Evidence. The trial court carried both motions for trial and each were considered during the State's presentation of evidence.

During the guilt-innocence phase, the State presented witness testimony and documentary evidence. Prior to calling its first witness, the State admitted Viba's payroll and banking records. As its first witness, the State called Wallace to testify as the State's complaining witness. Wallace hired Martinez to work for his company in October 2015. As a bookkeeper, her duties and responsibilities included accounts payable and receivable, preparing the company's payroll, and performing general matters related to human resources. Regularly, Martinez prepared and processed the payroll account for the company. Martinez was the only employee authorized by Wallace to write payroll checks. As far as her training, he testified she was trained by "the person leaving," who gave her the "what-to-do's." He could not recall the length of her training period.

Facing financial difficulties, Wallace testified he looked into his company's business records in December 2017. In reviewing bank records, he soon noticed two checks were cashed in the same amount during the same week. When he viewed each check, he saw that Martinez was listed as payee on both checks. The two-check pattern immediately struck him as odd. Generally, Martinez averaged 40 hours of work each week, though the exact number of hours varied. For example, Wallace explained some weeks it could be 40 hours and 10 minutes and other weeks it

2

could be 39 hours and 50 minutes. Wallace approximated he would pay Martinez about $700 every two weeks. Employees were never paid once a week. Martinez never asked him for a loan and he never paid her additional money outside her usual compensation.

After reviewing his records, Wallace found the same two-check pattern occurred each pay week beginning after Martinez had been hired by the company. After reviewing cashed checks all written in the same amount, Wallace printed out a payroll register of checks made payable to Martinez. After he confirmed the payroll checks had cleared his bank account, he found additional checks were made payable to her. At that point, Wallace decided not to confront Martinez but instead reported his concerns to the El Paso Police Department (EPPD). At that point, he decided to wait and "see if she would do it again." The next week, he confirmed she repeated the pattern.

As a second witness, the State called Carlos Ponce, a detective assigned to the financial crimes division of the of the EPPD. Detective Ponce testified his unit regularly investigated charges to include embezzlements, forgeries, and identity thefts. He has worked in that capacity for over 7 years. Ultimately, he was assigned to investigate Wallace's complaint against Martinez. In that capacity, he spoke to Wallace frequently as the investigation began. Martinez continued to work for the company during that time. At a point when Wallace expressed concerns about continuing to employ Martinez, Detective Ponce ran her name for warrants discovering she had an outstanding traffic warrant. He and his partner next went to VIBA's premises.  After confirming Martinez's identity, and the warrant status, they arrested her. At the scene, they asked her to point out her purse and keys, which they collected as personal belongings. After transporting Martinez to police headquarters, Detective Ponce emptied her purse of its contents, checking for items disallowed from the jail facility. In doing so, he soon found a payroll check in her purse, which was signed by Wallace and dated two weeks prior.

3

Once Detective Ponce showed Wallace the check recovered from Martinez's purse, he identified it as a check from his company (State's Exhibit 3A and 3B).[1] Wallace described for the jury that it was soon discovered that a piece of one check was glued to a separate check. He identified his signature on State's Exhibit 3B, which was glued on top of the other check identified as State's Exhibit 3A. Wallace identified State's Exhibit 3A as a check written out to Martinez in the amount of $642.83, dated January 19, 2018. He confirmed that State's Exhibit 3A did not contain his signature.

Detective Ponce testified their investigation revealed that Wallace's signature had been physically overlaid and glued onto the check marked as State's Exhibit 3A. Detective Ponce confirmed that State's Exhibit 3A was not authorized by Wallace. Detective Ponce next obtained bank records belonging to VIBA and Martinez. From those records, he discovered excessive deposits made to her account.

As the State's third witness, Yvonne Scarpinato testified she was employed by the El Paso District Attorney's Office as a forensic accountant. She described her job duties as assisting prosecutors with reviewing documentation and assisting the office with formatting records for ease of understanding during trial. Relevant to this case, Scarpinato reviewed records of the case including bank statements of several of Martinez's bank accounts, checks issued to her from VIBA, payroll check registers, and VIBA bank statements. Scarpinato explained she examined the payroll check registers for the years 2015, 2016, 2017, and part of 2018. She noticed that copies of checks to Martinez were either endorsed as "Estella Soto" or "Estella S. Martinez."

Scarpinato explained that she compiled all of Martinez's payroll checks and W2 forms into a binder, which was admitted as State's Exhibit 4. As to her findings, Scarpinato testified all the

---

[1] Martinez had objected on grounds of lack of proper foundation, lack of chain of custody, and hearsay. Overruling these objections, the trial court admitted the evidence.

4

payroll checks issued by VIBA had cleared VIBA's bank account. She found that some of those checks were deposited into Martinez's bank account, but some were not. Said differently, she found all checks issued to Martinez by VIBA had cleared VIBA's bank account. But not all of these checks were deposited into Martinez's bank accounts. Scarpinato explained that, because they did clear VIBA's account, a possibility is the checks were not deposited into Martinez's accounts, but instead were cashed. Matching the total of payroll checks with Martinez's W2s, Scarpinato opined Martinez had been properly paid for each payroll check.

Scarpinato also assisted in compiling State's Exhibit 5, a two-volume set of voluminous bank records previously admitted under State's Exhibit 1, which she had organized to make the documents easier to follow and read. State's Exhibit 5 included copies of additional checks that had cleared VIBA's account. Scarpinato testified the "extra checks" were issued by VIBA to Martinez and represented pay periods for which Martinez had already been paid per her review of Exhibit 4. She explained she reviewed each check corresponding with each pay period, noting duplicate checks were found for certain pay periods. In summary, Scarpinato found 61 properly issued payroll checks and 86 other checks that were not properly issued. Finally, Scarpinato created a spreadsheet summarizing all checks issued to Martinez to include both authorized payroll checks and unauthorized checks, which was admitted as State's Exhibit 6. Scarpinato testified that, over the course of Martinez's employment with VIBA from October 2015 to 2018, she was paid a total of $43,457.62 in properly authorized payroll. For that same time period, Scarpinato also described that Martinez had been paid additional checks deposited to her bank account totalling $63,435.35.

After the close of evidence, the jury returned a verdict of guilty on all three counts. Martinez elected to have her punishment assessed by the trial court. After a punishment hearing, the court sentenced her to ten years' confinement for Counts I and II, respectively, and two-years'

confinement for Count III. The court ordered the sentences to run concurrently. Martinez timely filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## DISCUSSION

Martinez presents four issues on appeal, which she briefed in the following order. First, she asserts the trial court erred when it allowed Yvonne Scarpinato to testify as an expert witness. Second, she contends the search of Martinez's purse was unreasonable. Third, she argues the trial court erred when it modified her proposed jury instruction regarding the admissibility of State's Exhibit 3A and 3B, which were found after a search of Martinez's purse. Lastly, she maintains the trial court erred in denying her motion for new trial. Following Martinez's lead, we address the issues of the appeal as she ordered them.

### A. Expert witness testimony

In her first issue, Martinez contends the trial court abused its discretion by allowing the State to introduce opinion testimony from an expert witness. She urges the witness lacked qualifications as an expert.

#### 1. Standard of review and applicable law

We review for an abuse of discretion a trial court's ruling on the admissibility of expert testimony. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. 2019). We will not disturb the trial court's ruling if it lies within the zone of reasonable disagreement. *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009). A trial court abuses its discretion when it acts unreasonably or arbitrarily without reference to guiding rules or principles. *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016). Even if expert testimony is erroneously admitted, reversal is warranted only if the appellant further demonstrates the erroneous admission affected her substantial rights. *See* TEX. R. APP. P. 44.2(b).

A trial court serves as a gatekeeper deciding preliminary challenges to witness qualifications and evidence admissibility. TEX. R. EVID. 104(a); *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). In discharging its role, the trial court is vested with the often-difficult task of determining what is irrelevant or likely to confuse the jury in its decision-making process. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Texas Rule of Evidence 702 provides, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. To be admissible, the proponent of the expert evidence must demonstrate, by clear and convincing evidence, that the testimony is "sufficiently reliable and relevant to help the jury in reaching accurate results." *Wolfe v. State*, 509 S.W.3d 325, 335–36 (Tex. Crim. App. 2017) (quoting *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)). To this end, the proponent must prove: (1) the expert is qualified; (2) the testimony is based on a reliable scientific foundation; and (3) the testimony is relevant to the issues in the case. *Wolfe*, 509 S.W.3d at 336. "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela*, 209 S.W.3d at 131.

### 2. Analysis

Before Scarpinato testified, the trial court conducted a *Kelly/Daubert* hearing outside the presence of the jury. Scarpinato described she was currently employed as a forensic accountant for the District Attorney's Office. She had been employed in that office for three years. She earned a bachelor's degree in accounting from the University of Texas at El Paso. Also, she held a licence as a Certified Public Accountant (CPA), authorized to practice in the State of Texas. She was first licensed in 2012, and her license has never lapsed. To maintain her CPA license, Scarpinato must complete a total of 120 hours of continuing education every three years, and a minimum of 20

hours each year. After college, she worked for nine years as an auditor for the United States Securities and Exchange Commission, nine years as a senior auditor for the Internal Revenue Service, and nearly six years in private practice preparing tax returns and providing bookkeeping services.

Originally, the State offered Scarpinato as a lay witness—not as an expert in forensic accounting—taking the position that her qualification as an expert was unnecessary based on the anticipated scope of her testimony. Scarpinato had personal knowledge of the accounting records and evidence involved in the case. After the *Kelly/Daubert* hearing, the State changed its position, offering Scarpinato as an expert in the field of forensic accounting, and accounting generally. Martinez objected, asserting the issues of the case did not require expert testimony. Moreover, she urged there was "a danger of both reliability and relevance" in regard to Scarpinato's testimony. Martinez further argued Scarpinato's testimony required no expertise and the State had not elicited any opinion testimony.

The trial court found that Scarpinato qualified as an expert as a forensic accountant. The court noted it would be helpful to the jury to have Scarpinato's summarization of her findings after her review of the voluminous records of the case. Additionally, the trial court found that Scarpinato's testimony would be "highly relevant." After Martinez asked for a ruling on reliability, the court responded it had also found her testimony reliable. Once Scarpinato appeared before the jury, Martinez renewed her objection as "improper 702 evidence."

On appeal, Martinez asserts Scarpinato was not qualified to testify as an expert. She urges she did not consult with an expert in the field, she never previously testified as an expert, and she did not have any specific training as a forensic accountant.

The State responds the issue is unpreserved as Martinez failed to object on the grounds of qualification. Rather, it claims Martinez only objected to relevance and reliability. This Court has

held that an expert's qualifications, reliability, and relevance raise distinct questions and issues, and an objection based on one requirement does not preserve error as to another. *See Martinez v. State*, No. 08-17-00165-CR, 2019 WL 4127261, at *14 (Tex. App.—El Paso Aug. 30, 2019, no pet.) (not designated for publication) (citing *Shaw v. State*, 329 S.W.3d 645, 655–56 (Tex. App.— Houston [14th Dist.] 2010, pet. ref'd)); *see also Urquhart v. State*, 128 S.W.3d 701, 706 (Tex. App.—El Paso 2003, pet. ref'd) (mem. op.). Assuming without deciding whether Martinez preserved error on qualification as an expert, we nonetheless conclude her argument still fails.

First, Martinez cites no authority suggesting that an expert witness must have testified as an expert previously or must have consulted another expert before qualifying as an expert witness in a case. Second, Scarpinato testified she was a licensed CPA since 2012 and had been employed as a forensic accountant for the previous three years. She further testified that, before practicing forensic accounting, she was employed as an auditor for 18 years and she used the same skills as an auditor as she did as a forensic accountant. Scarpinato was able to compile and explain the numerous bank records and show how she reached her sum of authorized and unauthorized payroll checks. From our record, there is no indication that Scarpinato's education, training, and experience were too limited or otherwise inadequate for her to qualify as an expert in forensic accounting. *Rodgers v. State*, 205 S.W.3d 525, 533 (Tex. Crim. App. 2006); *Rhomer v. State*, 569 S.W.3d 664, 671 (Tex. Crim. App. 2019).

Accordingly, we conclude the trial court did not abuse its discretion in admitting Scarpinato's testimony. We overrule Martinez's first issue.

### B. Motion to Suppress

In her second issue, Martinez contends the trial court erred when it denied her motion to suppress evidence found in her purse. She argues the State's search of her purse was unreasonable and not performed in accord with EPPD's procedures.

### 1. Standard of review and applicable law

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In doing so, we must view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it falls outside the zone of reasonable disagreement. *Id.* (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We apply "a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id.* at 922–23. Moreover, when no findings of fact are obtained or provided, we assume the trial court made implicit findings of fact that support its decision so long as those findings are supported by the record. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006).

The Fourth Amendment of the United States Constitution provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.; *Igboji v. State*, 666 S.W.3d 607, 613 (Tex. Crim. App. 2023). "Generally, the Fourth Amendment requires that searches and seizures be accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be searched or seized." *Igboji*, 666 S.W.3d at 613. "[A] warrantless search or seizure is *per se* unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement." *Id.* Once a defendant has shown that a warrantless search or seizure has

10

occurred, the burden shifts to the State to prove an exception to the warrant requirement applies. *Id*.

As relevant here, the United States Supreme Court has recognized that the search-incident-to-arrest exception contains two distinct propositions: "The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee." *United States v. Robinson*, 414 U.S. 218, 224 (1973). Under the second type of search incident to arrest exception, searches of the person, or of property within the immediate control of the person, are always justified upon no more justification than the arrest itself. *Id*. at 235. The Court of Criminal Appeals has recently held that:

> [when] an arrestee is in actual possession of a receptacle at the time of, or reasonably contemporaneously to, his custodial arrest, and that receptacle must inevitably accompany him into custody, a warrantless search of that receptacle at or near the time of the arrest is reasonable under the Fourth Amendment as a search incident to the arrestee's person. Such a search requires no greater justification than the fact of the lawful arrest itself.

*Price v. State*, 662 S.W.3d 428, 438 (Tex. Crim. App. 2020).

### 2. Analysis

Prior to trial, Martinez filed a motion requesting suppression of all evidence the State planned on introducing at trial because it was obtained without probable cause and without a valid warrant. During the guilt-innocence phase of trial, Detective Ponce began testifying in front of the jury on his investigation. Martinez soon requested a hearing outside the presence of the jury, which the court granted.

Detective Ponce continued describing that "white collar" crimes typically take a while to investigate, but Wallace was dissatisfied with their pace. For this reason, Detective Ponce decided to run Martinez for warrants, resulting in his discovery of an outstanding traffic warrant. Once he and Detective Hicks confirmed she remained employed by VIBA, they went to the company's

11

office. When they walked in, Ponce obtained positive identification of Martinez. Detective Hicks placed Martinez under arrest for the traffic warrant. Ponce testified that, at that point, Martinez was not under arrest for any alleged thefts. Ponce's partner conducted a pat-down and proceeded to collect her belongings, including her purse. They transported Martinez to headquarters. Once at headquarters, Detective Ponce emptied Martinez's purse as an inventory search incident to arrest. While searching the purse, Ponce discovered a payroll check with Wallace's signature. Ponce testified he did not read Martinez her *Miranda* warnings at any point. Ponce asked Martinez about the check and she confirmed it was her paycheck. Ponce asked her why she had a payroll check two weeks after she got paid. Martinez responded that she had done a mobile deposit. Ponce asked her why she did not shred the check, but she did not respond. Ponce then told her he wanted to ask her about an incident that occurred at work and Martinez said she wanted to talk to an attorney. Ponce testified he did not ask her anything else. He then completed paperwork and transported her to the county jail.

Martinez asked the trial court to suppress the check found in her purse, previously admitted as State's Exhibit 3A and 3B, because the search was conducted without a warrant.[2] The State responded by asserting that the search of Martinez's purse was justified as an inventory search or, in the alternative, as a search incident to arrest. At the conclusion of the hearing, the trial court found the search of the purse valid as a search incident to arrest.

On appeal, Martinez asserts that Detective Ponce testified he did not know the EPPD inventory policy, and he merely used the ruse of an inventory search to find evidence on a case that he had not yet done work on. In opposing, the State argued that Detective Ponce's search of

---

[2] Martinez also argued that statements made when she was under arrest should be suppressed because she was not Mirandized. The trial court agreed and suppressed the statements. This is not an issue on appeal.

the purse was justified because it was a search-incident-to-arrest. The State also argued, in the alternative, that the search also qualified under the inventory search exception.

Because we may uphold the trial court's ruling on any ground that would support the court's order, we need not address whether Ponce sufficiently knew the inventory policy and if the search qualified as a valid inventory search. *See Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). When "an arrestee is in actual possession of a receptacle at the time of, or reasonably contemporaneously to, his custodial arrest, and that receptacle must inevitably accompany him into custody, a warrantless search of that receptacle at or near the time of the arrest is reasonable under the Fourth Amendment as a search incident to the arrestee's person." *Price*, 662 S.W.3d at 438. The Court of Criminal Appeals has held that no greater justification is needed than the lawful arrest itself. *Id.* Martinez does not challenge the legality of the underlying arrest. *See id.*; *Stewart*, 611 S.W.2d at 437. Accordingly, we conclude the trial court did not abuse its discretion in finding that the officers conducted a lawful search incident to arrest. *See Stewart*, 611 S.W.2d at 437.

For this reason, we overrule Martinez's second issue.

### C.  Jury charge error

In Martinez's third issue, she asserts the trial court abused its discretion regarding the jury charge because it did not include her requested language.

#### 1.  Standard of review and applicable law

We review jury-charge error claims under a two-step process to determine whether error occurred, and, if so, whether appellant was sufficiently harmed to warrant reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If appellant objects, she is entitled to reversal if, on the record as a whole, the error was sufficient to cause her some harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc).

A defendant's right to the submission of an Article 38.32 jury instruction "is limited to disputed issues of fact that are material to [her] claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Article 38.23 provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PRO. ANN. art. 38.23(a). Before a defendant is entitled to the submission of a jury instruction under Article 38.23(a), she must satisfy three requirements:

> (1) The evidence heard by the jury must raise an issue of fact;
>
> (2) The evidence on that fact must be affirmatively contested; and
>
> (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden*, 242 S.W.3d at 510. "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Id.* If non-disputed facts are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.*

### 2. Analysis

During the charge conference, the State requested the trial court remove the Article 38.23 instruction concerning the exhibits showing the check obtained from Martinez's purse. The State argued that there was no disputed fact issue for the jury to resolve and, therefore, the instruction was not necessary. In response, Martinez asserted the evidence that Detective Ponce "was there for the traffic warrant" but that he was also "there at the behest of Mr. Wallace" constituted a factual dispute for the jury's resolution. Martinez contended that she wanted an addition that the jury could disregard "any testimony pertaining" to the exhibits. The trial court concluded that "if

14

the jury finds that it's in violation of any Constitutional law, state or U.S., then it can disregard the evidence." It then read what the instruction would state:

> Regarding State's Exhibit 3A and 3B, if you believe or have a reasonable doubt, that this evidence was obtained in violation of any provision of the Constitution or laws of the State of Texas or the Constitution or law of the United States of America, then the jury shall disregard any such evidence so obtained.

Martinez did not lodge an objection or submit a proposed instruction.

On appeal, Martinez asserts the trial court erred because it did not include an Article 38.23 instruction in the form she had requested. Specifically, Martinez asserts she requested a jury instruction stating as follows:

> Now before you consider the testimony of Detective Carlos Ponce concerning State's Exhibit 3A and 3B taken from Estella Soto Martinez, you must first find beyond a reasonable doubt from Detective Carlos Ponce's testimony regarding his execution of a traffic warrant that Detective Carlos Ponce had probable cause to believe and did believe that Estella Soto Martinez was under arrest for the traffic warrant and Detective Ponce conducted the search subject to that warrant and after arresting Estella Soto Martinez for that warrant, and if you do not so find beyond a reasonable doubt, you will disregard such testimony and evidence.

Our record does not show that Martinez presented this language to the trial court. In fact, the first mention of the proposed instruction is in Martinez's motion for new trial. Martinez asserts the language the trial court approved was insufficient to instruct the jury on an essential issue of fact and how the jury should resolve it as exclusive factfinders of the case.

Here, the record shows the trial court did include an Article 38.23 instruction, over the State's objection. From our review of the record, Martinez received the relief she requested. Martinez provides no authority in support of her complaint that the instruction was not specific enough. Moreover, the record does not support Martinez's claim that she submitted a proposed instruction with different language included.

For this reason, we overrule Martinez's third issue.

15

### D. Motion for new trial

In her final issue, Martinez asserts the trial court erred in denying her motion new trial.

#### 1. Standard of review

A trial court's denial of a defendant's motion for new trial is generally reviewed for an abuse of discretion, subject to reversal only when such ruling is arbitrary or unreasonable. *See Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

#### 2. Analysis

In support of her fourth issue, Martinez asserts that due to the voluminous amount of evidence, her trial counsel did not have sufficient time to prepare for trial and was forced to argue her motion to suppress and *Kelly/Daubert* hearing during the trial. Martinez contends this had a negative effect on her trial counsel's ability to effectively represent her. The State asserts Martinez failed to preserve error in her fourth issue because her claim on appeal does not comport with any ground in her new-trial motion.

After trial, Martinez filed her motion for new trial challenging the trial court's rulings on a challenge for cause of a potential juror, the expert testimony, the suppression motion, and the denial of the requested jury instruction. Martinez's motion did not contain any complaint on trial counsel's lack of adequate time to prepare for trial, a complaint regarding ineffective assistance of counsel, or a complaint that the trial court denied a motion for continuance. Additionally, Martinez did not request a hearing on her motion for new trial.

Any complaint regarding her trial counsel's performance or inadequate time to prepare for trial was not raised by objection at the time of trial or in Martinez's motion for new trial. We conclude this issue is not preserved for appellate review. *See* Tex. R. App. P. 33.1; *see also Routier v. State*, 112 S.W.3d 554, 586 (Tex. Crim. App. 2003) (argument on appeal differs from objection at trial); *McCarley v. State*, 763 S.W.2d 630, 632 (Tex. App.—San Antonio 1989, no pet.)

16

(argument on appeal differs from ground in motion for new trial). To the extent we could consider Martinez's complaints as raised for the first time on appeal, we otherwise determine she waives any error as she does not support her argument with any citations to authority or does she adequately develop her argument. *See* TEX. R. APP. P. 38.1(i).

Accordingly, we overrule Martinez's fourth issue.

## CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

January 23, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)